**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RHODES S. BLACKWELL,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRANK BISIGNANO,**[1]<br>*Commissioner of Social Security*,<br><br>**Defendant.** | ) | **Case No. 24-cv-03461 (APM)** |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Plaintiff Rhodes S. Blackwell seeks reversal of the final decision by the Social Security Administration ("SSA" or the "Agency") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). Pending before the court are Plaintiff's Motion for Judgment of Reversal, ECF No. 8, and Defendant's Motion for Judgment of Affirmance, ECF No. 13. For the following reasons, the court denies Plaintiff's motion in part, grants Defendant's motion in part, and remands this case to the Commissioner for further review so that the agency may evaluate the evidence that was not available to the Administrative Law Judge ("ALJ") at the time of his decision.

[1] The court substitutes the current Commissioner of Social Security Frank Bisignano as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

## II. BACKGROUND

### A. Statutory Background

To qualify for disability insurance benefits under Title II of the Social Security Act, a claimant must prove that he has a disability that renders him unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A claimant must support his alleged impairment with "[o]bjective medical evidence" that is "established by medically acceptable clinical or laboratory diagnostic techniques." *Id.* § 423(d)(5)(A).

The SSA has established a "five-step sequential evaluation process" for determining whether a person is disabled and entitled to disability benefits. *See* 20 C.F.R. § 404.1520(a)(1). At step one, the claimant must establish that he is not presently engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). At step two, he must show that he has a "severe medically determinable physical or mental impairment" that has lasted or is expected to last a continuous period of at least 12 months ("duration requirement"). *Id.* §§ 404.1520(a)(4)(ii), 404.1509. At step three, the claimant must demonstrate that his impairment meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R ("Listing of Impairments"). *Id.* § 404.1520(a)(4)(iii). If his impairment is listed and he meets the duration requirement, then he is conclusively presumed disabled, and the inquiry ends. *Id.* § 404.1520(d).

If the impairment is not listed, the ALJ assesses the claimant's residual functional capacity ("RFC") before step four. *Id.* § 404.1520(e). The "RFC is an assessment of an individual's ability

to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). At step four, the claimant must show that his impairment prevents him from performing his "past relevant work" in light of his RFC. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still perform his past relevant work, he does not have a disability for purposes of the Act. *Id.* The burden of proof at each of the first four steps rests on the claimant. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

The burden shifts at step five. If the claimant cannot perform his past relevant work, the Commissioner of Social Security ("Commissioner") must show that, based on the person's RFC, age, education, and work experience, he is able to perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *see also Butler*, 353 F.3d at 997. The Commissioner typically offers such evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's RFC and vocational factors. *See* 20 C.F.R. § 404.1566(e). If the claimant prevails at each step, then he is deemed disabled and qualifies for disability benefits. *See id.* § 404.1520(a)(4).

**B. Plaintiff's Disability Claim**

Plaintiff filed his application for disability insurance benefits on October 30, 2021. Admin. Record, ECF No. 4 [hereinafter A.R.], at 169–71[2]; Compl., ECF No. 1 [hereinafter Compl.], ¶ 6. He alleged disability starting on April 4, 2017, due to post-traumatic stress disorder (PTSD), affective disorder, anxiety disorder, disorders of the spine, and obesity. Compl. ¶¶ 4–5. The Agency denied Plaintiff's application both initially, A.R. at 105–08, and after reconsideration, *id.*

[2] All page citations are to the original pagination of the Administrative Record.

at 111–13. Plaintiff then requested a hearing before an ALJ and submitted medical documentation. *Id.* at 114–15; *see generally* Administrative Record, ECF No. 5 [hereinafter A.R. II].

*1. Hearing Testimony*

The ALJ held a hearing on May 21, 2024. A.R. at 63, 162. At the hearing, Plaintiff testified that he did not graduate from college and that he served in the military from October 2007 to December 2009. *Id.* at 64–65. He was last employed by the Department of Veterans Affairs ("VA") as a "housekeeping aide" at a VA hospital, where he worked full time from 2015 until his resignation in April 2017. *Id.* at 65, 67. Plaintiff explained that he had been "given the option to either be fired or resign" because he was missing "anywhere from three to four [or five] days of . . . work every month" due to his "mental health problems." *Id.* at 67, 72. At the time of the hearing, Plaintiff had not worked for the past seven years, *id.* at 65, and remained at home, where he "[v]ery seldomly" did housework and other chores, *id.* at 67–68.

Plaintiff further testified that he experienced panic attacks that led him to avoid tasks like shopping and other public activities. *Id.* at 73. He elaborated that these panic attacks "were a lot of the reason why [he] missed work" and lasted anywhere from 30 minutes to several hours. *Id.* at 74–75. Plaintiff added that, at the time of his testimony, he experienced panic attacks daily, approximately 20 in "an average week," and "way more" when he was working full-time. *Id.* When they occurred at work, he would "hide[]" somewhere to "get away from people" or "clock out using sick leave" and "leave for the day." *Id.* at 75. These panic attacks came "hand in hand" with manic attacks, shortness of breath, and outbursts of anger. *Id.* Medication did not resolve the panic attacks. *Id.* at 77.

The ALJ also heard from Dana Lessne, an independent vocational expert. *Id.* at 78. Lessne identified Plaintiff's past relevant employment as a survival equipment repairer in the military,

bartender, hospital cleaner, and mail clerk. *Id.* at 79. The ALJ posed the following hypothetical to Lessne:

> Assume I find that the Claimant is 37 years old, has a high school education, plus some college. Assume further I find that he can perform medium work, but is limited by the following exertional and non-exertional impairments. He needs to avoid ladders or unprotected heights. He needs to avoid the operation of heavy, moving machinery. He needs a low stress work environment. By that I mean no production line. He needs simple tasks, needs to avoid contact with the public or co-workers. And by that I mean he needs tasks that do not require the assistance of others, or requiring him to assist others in the performance of the tasks. Can the Claimant perform any of his past work, either as he performed it, or as it's normally performed in the national economy?

*Id.* at 80. Lessne responded that two of Plaintiff's previous positions—hospital cleaner and mail clerk— were compatible with that hypothetical. *Id.* The ALJ then adjusted the hypothetical to account for entry-level positions where the claimant had no skills or semi-skills, with the same other limitations originally described. *Id.* Lessne listed several jobs available in the national economy that were compatible with the adjusted hypothetical, including floor waxer, cleaner, marker, and routing clerk. *Id.* at 80–81. The ALJ also asked about the number of breaks, off-task behavior, and unscheduled absences that could be tolerated by employers. *Id.* at 81. Lessne advised that two 15-minute morning breaks, one each in the morning and afternoon, and a 30-minute lunch break would be tolerated, but that off-task behavior of more than ten percent and more than one unscheduled absence per month would be "work preclusive." *Id.*

2. *ALJ Findings and Conclusion*

On June 6, 2024, the ALJ issued his decision. He held that Plaintiff was not entitled to benefits, because he "was not under a disability, as defined in the . . . Act, at any time from April 4, 2017, the alleged onset date, through June 30, 2021, the date last insured." *Id.* at 56. At the first two steps, the ALJ determined that (1) Plaintiff was not engaged in substantial gainful activity

from April 4, 2017, through his date last insured; and (2) Plaintiff had several severe impairments that significantly impacted his ability to perform basic work activities, including PTSD, affective disorder, anxiety disorder, disorders of the spine, and obesity. *Id.* at 44–45. At the third step, the ALJ found that Plaintiff's impairments, although severe, did not meet or equal any of the listed impairments described in Appendix 1 of the Regulations. *Id.* at 45.

Having determined that Plaintiff did not suffer from a listed impairment, the ALJ continued to step four and assessed Plaintiff's RFC. *Id.* at 46–47. Upon reviewing the record, which was nearly 3,000 pages long, the ALJ concluded that Plaintiff had claimed "a greater degree of debilitation than the medical evidence [could] support." *Id.* at 54. The ALJ ultimately determined that Plaintiff had the RFC "to perform medium work as defined in 20 CFR 404.1567(c)" with certain limitations, including avoiding "ladders or unprotected heights," the "operation of heavy moving machinery," "concentrated exposure to dust, fumes, or gases," and "contact with the public and co-workers." *Id.* at 46–47. Plaintiff "need[ed] a low stress work environment, defined as no production line," "simple tasks," and "tasks that do not require the assistance of others or require [him] to assist others in the performance of their tasks." *Id.*

After finding that Plaintiff's adjudged RFC was not compatible with Plaintiff's past relevant work, *id.* at 54, the ALJ proceeded to step five, *id.* at 55. Based on the vocational expert's testimony, the ALJ concluded that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." *Id.* at 55–56. As a result, the ALJ found that Plaintiff was not under a disability from his alleged onset date through the date last insured. *Id.* at 56.

### 3. *Decision of the Appeals Council*

On July 30, 2024, Plaintiff filed a request for reconsideration with the Appeals Council. *Id.* at 164–66. On appeal, he submitted additional evidence for review in the form of a psychological evaluation report and opinion prepared by Dr. Christina N. Ryser.[3] *Id.* at 15–38. Dr. Ryser had reviewed Plaintiff's medical records, interviewed him, and conducted a mental status examination, which identified several limitations in Plaintiff's functional capacity. *Id.* at 30. On October 24, 2024, the Appeals Council denied the request for review, explaining that the reasons provided by Plaintiff "d[id] not provide a basis for changing the [ALJ's]" decision. *Id.* at 1–7. The Appeals Council acknowledged that Plaintiff had submitted a medical opinion from Dr. Ryser, but it declined to "exhibit" the additional evidence because the report did "not show a reasonable probability that it would change the outcome of the decision." *Id.* at 2. Plaintiff subsequently filed this action on December 11, 2024. *See generally* Compl.

## III. LEGAL STANDARD

The court must uphold the Commissioner's determination "if it is supported by substantial evidence and is not tainted by an error of law." *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987); *see also* 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This "requires more than a scintilla,

[3] As both parties agree, the D.C. Circuit has not yet addressed "how a reviewing Court should consider new evidence provided to the Appeals Council." Pl.'s Br. Supp. Req. for Rev. of Social Security Decision Under 42 U.S.C. § 405(g), ECF No. 8, at 25; Def.'s Mot. for J. of Affirmance and in Opp'n to Pl.'s Mot. for J. of Reversal, ECF No. 13, at 23. The majority of circuits "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991); *see also Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) (collecting cases from the Eighth, Ninth, Tenth, and Eleventh Circuits). *But see Eads v. Sec'y of Dep't of Health & Hum. Servs.*, 983 F.2d 815, 817 (7th Cir. 1993) (holding that, where the Appeals Council "has refused to review the case," the "correctness of [the ALJ's] decision depends on the evidence that was before him," and the district judge should not review "evidence never presented to [the ALJ]")) *and Cotton v. Sullivan*, 2 F.3d 692, 695–96 (6th Cir. 1993) (same). As discussed below, the court need not choose a side, as the Appeals Council failed to adequately explain why it did not consider Dr. Ryser's report.

but can be satisfied by something less than a preponderance of the evidence." *Id.* (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003)). Though this standard is "highly deferential to the agency fact finder," *Jeffries v. Astrue*, 723 F. Supp. 2d 185, 189 (D.D.C. 2010) (internal quotation marks omitted), the ALJ must have "analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits," *Little v. Colvin*, 997 F. Supp. 2d 45, 49 (D.D.C. 2013) (internal quotation marks omitted). In other words, the ALJ is required to "build an accurate and logical bridge from the evidence to [his] conclusion" so that the reviewing court can "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (cleaned up). But even if the court identifies an error, the court must "affirm the Commissioner's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021).

## IV. DISCUSSION

Plaintiff challenges the Commissioner's decision on three primary grounds. First, he claims that the ALJ failed to properly evaluate the record evidence and, therefore, failed to accurately determine Plaintiff's limitations and RFC. Pl.'s Br. Supp. Req. for Rev. of Social Security Decision Under 42 U.S.C. § 405(g), ECF No. 8 [hereinafter Pl.'s Br.], at 15–23. Second, Plaintiff argues that the ALJ "failed to present a hypothetical question to the vocational expert . . . that accurately described the mental limitations recognized for [Plaintiff] in the ALJ's decision." *Id.* at 23–25. Third, Plaintiff asserts that "[r]emand is [r]equired" for consideration of Dr. Ryser's report, which was "not before the ALJ." *Id.* at 25–26. Only the last of these arguments persuades.

### A. The ALJ's Evaluation of the Evidence

When assessing a claimant's RFC, which bears both on a claimant's ability to perform past

relevant work (step four) and his ability to do other work (step five), an ALJ's decision must be "based on all of the relevant evidence of a claimant's ability to do work and must contain a 'narrative discussion' identifying the evidence that supports each conclusion." *Butler*, 353 F.3d at 1000 (quoting SSR 96–8p, 1996 WL 374184, at *3, *7). The ALJ "must explain how he considered and resolved any 'material inconsistencies or ambiguities' evident in the record, as well as the reasons for rejecting medical opinions in conflict with the ultimate RFC determination." *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *7).

Plaintiff challenges the ALJ's evaluation of the record evidence and consequent determination of his RFC on two fronts. First, he contends that the ALJ erroneously disregarded the opinions of his treating psychiatrist, Dr. Lenin Núñez, when determining his RFC. Pl.'s Br. at 15–21. Second, he argues that the ALJ inappropriately discounted Plaintiff's subjective statements regarding the severity of his symptoms. *Id.* at 21–23. The Commissioner counters that the ALJ "supportably determined that Plaintiff could perform a range of medium, unskilled work with a number of mental restrictions to account for his anxiety and mood liability" and that this determination was properly based "on the objective evidence, Plaintiff's treatment history, his subjective statements, notations in his medical records about his activities and his adherence to treatment, and the evaluation of several VA psychologists." Def.'s Mot. for J. of Affirmance and in Opp. to Pl's Mot. for J. of Reversal, ECF No. 13 [hereinafter Def.'s Br.], at 6. Although the ALJ could have charted a clearer path through his analysis, the court ultimately agrees with the Commissioner that substantial evidence supports the decision.

*1. Dr. Núñez's Medical Opinion*

The court begins with the ALJ's analysis of the medical opinion evidence. By regulation, an ALJ is not required to give specific evidentiary weight to any medical opinion, "including those

from [the claimant's] medical sources."[4] 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of medical opinions against several factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(a)–(c). Of these factors, supportability and consistency are the "most important." *Id.* §§ 404.1520c(a), (b)(2). "Supportability" focuses on the relevance of "the objective medical evidence and supporting explanations presented by a medical source," while "consistency" looks at how strongly a medical opinion lines up with "evidence from other medical sources and nonmedical sources." *See id.* § 404.1520c(c)(1)–(2). The ALJ must explain his consideration of these factors, but "there is no specific format required." *David W. v. Kijakazi*, 21-cv-3370 (GMH), 2023 WL 5035935, at *11 (D.D.C. Aug. 8, 2023) (collecting cases); *cf. Cobb v. Astrue*, 770 F. Supp. 2d 165, 172 (D.D.C. 2011) (holding that the ALJ's RFC inquiry was insufficient where the assessment of medical opinions contained generalizations rather than analysis and citation to specific facts).

Plaintiff offered medical opinions from Dr. Núñez, his treating psychiatrist in the Dominican Republic, in the form of questionnaires completed in 2022, 2023, and 2024. A.R. II at 2914–19, 2810–14, 2921–25.[5] The questionnaires reflect Dr. Núñez's opinion that Plaintiff "had several areas of marked restriction in mental functioning, including the ability to maintain socially appropriate behavior, adhere to basic standards of cleanliness, the ability to get along with co-

[4] Prior to March 27, 2017, the relevant regulations and the D.C. Circuit required ALJs to give controlling weight to the medical opinions of a claimant's treating physician. *See Cox v. Kijakazi*, 77 F.4th 983, 987 (D.C. Cir. 2023) (applying treating physician rule to claims filed in 2014); *see also Saunders*, 6 F.4th at 4–5 (same). While "the D.C. Circuit has not yet spoken on whether its treating physician rule survived the revised regulations, other courts in this District have applied the revised regulations." *Stephanie G. v. O'Malley*, No. 22-cv-00904 (RMM), 2024 WL 2271821, at *11 (D.D.C. May 20, 2024) (collecting cases). Since Plaintiff's claims were filed in 2021, the court applies the revised regulations. But even if the treating physician rule survived the March 2017 revision, the Circuit's rule does not prevent an ALJ from rejecting a physician's opinion so long as the ALJ adequately explained his reasons for doing so. *See Jones v. Astrue*, 647 F.3d 350, 355 (D.C. Cir. 2011). The ALJ provided such an explanation here. *See* A.R. at 54.

[5] The ALJ identified four opinions, but the fourth is a duplicate of the 2023 questionnaire. *See* A.R. II at 2805–09.

workers, and interact appropriately with the general public." A.R. at 54. The ALJ determined that these opinions were "unpersuasive" based on both supportability and consistency. *Id.* On supportability, the ALJ found the support for Dr. Núñez's opinions was "limited to a list of generalized symptoms, which [were] not objectively reflected in treatment records, including regular anger management problems, hyperarousal, hypervigilance, and cognitive impairment." *Id.* On consistency, the ALJ explained that the restrictions marked in the questionnaires "were not consistent between the [three] opinions and no explanation was given as to the changes in opinion." *Id.* The ALJ did not elaborate further.

The ALJ offered sufficient explanation for the court to determine that the ALJ analyzed the necessary factors, even though a more thorough analysis would have been preferable. The court's review of the record also confirms that Dr. Núñez's opinions are not particularly persuasive. As the ALJ noted, the questionnaires are sparse, offering almost no explanation for their findings. *See id.*; A.R. II at 2914–19, 2810–14, 2921–25. Consequently, the "supporting explanations" for the ALJ to evaluate were scant beyond a list of symptoms. 20 C.F.R. § 404.1520c(c)(1). The questionnaires are also inconsistent with each other and the available treatment records. For example, Dr. Núñez's 2023 and 2024 questionnaires both opine that the "patient's symptoms and related limitations as detailed in [the] questionnaire apply as far back as [ ] April 4, 2017." A.R. II at 2814, 2925. But the questionnaires vary widely with respect to marked limitations: the 2023 questionnaire identifies marked limitations in eight areas, *id.* at 2813, while the 2024 questionnaire identifies marked limitations in only two, *id.* at 2924. Further, as the ALJ observed, certain symptoms that are identified as the "most frequent" or "severe" on the questionnaires, such as hyperarousal, *see, e.g., id.* at 2923, are not reflected in other treatment records, *see generally id.* at 209–2961. Meanwhile, other symptoms identified in the treatment

records, such as panic attacks, are not captured in the questionnaires at all. *See generally id.* at 2811, 2922 (leaving "recurrent panic attacks" unmarked on the 2023 and 2024 questionnaires and not listing panic attacks among the symptoms in the 2022 questionnaire). That Dr. Núñez's opinion is consistent with the treatment records on some other symptoms, *see* Pl.'s Br. at 18, does not resolve those inconsistencies.

In response, Plaintiff speculates that "evidence documenting periods of improvement followed by inevitable worsening of symptoms is what explains why Dr. Núñez provided different opinions on [Plaintiff's] degree of functioning at different times." Pl.'s Mem. in Opp'n to Def.'s Mot. for J. of Affirmance and Reply in Supp. of Pl.'s Mot. for J. of Reversal, ECF No. 15 [hereinafter Pl.'s Reply], at 1. But Plaintiff does not point to any support in the record for that explanation, nor do Dr. Núñez's questionnaires match it. Indeed, the questionnaires do not appear to be snapshots of Plaintiff's "degree of functioning at different times," such that they serve to "document[] periods of improvement followed by inevitable worsening of symptoms." Pl.'s Reply at 1–2. Rather, as explained previously, at least two of the questionnaires purport to represent Plaintiff's symptoms as far back as April 4, 2017. *See* A.R. II at 2814, 2925.

Nor did the ALJ, as Plaintiff contends, offer a "lay conclusion that opinions on a patient's mental limitations should never vary over time." *See* Pl.'s Br. at 19. Plaintiff's reliance on *Cox v. Kijakazi*, 77 F.4th 983 (D.C. Cir. 2023), is therefore unavailing. *See* Pl.'s Br. at 19. In that case—which applied the heightened treating physician rule—the D.C. Circuit reviewed a district court's holding that the Commission "permissibly discounted the evidence from [the plaintiff's] treating physician." *Cox*, 77 F.4th at 996. The Circuit reversed. *Id.* It found that the ALJ "erred in cherry-pick[ing] [the physician's] mental status findings that supported his decision and using them to discount her overall opinion as [the plaintiff's] treating physician." *Id.* (quotation marks omitted).

The ALJ did no such thing here. Rather than "pick[ing] and choos[ing] from [the physician's] periodic evaluations," *id.*, the ALJ here cited the inconsistencies between the questionnaires and longitudinal treatment records, A.R. at 54. And he explained why the lack of supporting explanations in the questionnaires made Dr. Núñez's opinions unpersuasive altogether. *Id.* Plaintiff therefore has not shown that the ALJ erred in rejecting Dr. Núñez's opinions.

2. *Plaintiff's Subjective Statements*

The court turns next to Plaintiff's contention that the ALJ erred in evaluating his subjective statements. Pl.'s Br. at 21. When considering a claimant's symptoms, the ALJ must first determine whether a "medically determinable impairment" exists that could cause the claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 2017). Second, the ALJ must "examine the entire case record" to evaluate the "intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at *4. The ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at *5. Instead, "[a] report of minimal or negative findings or inconsistencies in the medical evidence" represents but "one of the many factors [that the ALJ] must consider." *Id.* These factors include an individual's "[d]aily activities," the "location, duration, frequency, and intensity" of symptoms, "[f]actors that precipitate and aggravate the symptoms," the effects of medication, the "treatment" an individual receives, and measures that an individual uses to relieve symptoms, among others. *Id.* at *7–8.

The ALJ followed this analytical framework. First, the ALJ credited Plaintiff's hearing testimony that "he experienced anxiety symptoms and mood liability that limited his ability to maintain work." A.R. at 47. The ALJ then concluded that Plaintiff's "medically determinable

impairments could reasonably be expected to cause" his alleged symptoms, including "panic attacks at work due to being around people," "manic attacks, shortness of breath, [and] anger outbursts." *Id.* But, at the next step, he found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms to be "inconsistent" with the other record evidence. *Id.* In making this finding, the ALJ considered and summarized a wide swath of materials, including Plaintiff's background, medical history, and treatment records. *See id.* at 48–54. He specifically identified inconsistencies between the frequency of the panic attacks reported in the record and Plaintiff's hearing testimony. *Id.* at 47. The ALJ also pointed to Plaintiff's participation in daily activities as "inconsistent with his allegations of disability," such as "boxing" and "playing in a frisbee golf league, watching 'a lot' of movies, and arranging a trip to Europe." *Id.* at 49.

In response, Plaintiff argues that the ALJ "mischaracterized the record, which makes frequent note of [Plaintiff's] panic attacks." Pl.'s Br. at 22–23. Not so. The ALJ did not deny that Plaintiff suffered from panic attacks. A.R. at 47. He instead questioned the *regularity* of Plaintiff's panic attacks, noting Plaintiff is "not reported to have regular panic attacks or panic symptoms when he is receiving care through the VA and traveling internationally between Jacksonville, Florida and the Dominican Republic," and that Plaintiff's treatment records describe his panic attacks as "sporadic and without agoraphobia." *Id.* (internal quotation marks omitted). The ALJ also observed that the evidence does not "reflect reports of panic attacks at work." *Id.* at 48. The ALJ's findings are consistent with the court's review of the record. The court does not doubt that Plaintiff suffers from panic attacks, but the record does not reflect they occurred at the frequency stated in his testimony. *Compare* A.R. at 74–75 (describing that he experienced 20 panic attacks during an average week and had "way more" when working) *with* A.R. II at 1144–84 (not identifying frequent panic attacks during period at issue). Indeed, panic attacks begin

appearing in Plaintiff's longitudinal treatment records with greater regularity beginning in 2019, two years after the alleged onset, and even those records call into question the frequency of attacks that Plaintiff claims. *See, e.g.*, A.R. II at 1629 (describing panic attacks as "sporadic"), 1698 (physician observing that Plaintiff likely misidentified a panic attack as general anxiety), 2035 (describing "occasional panic attacks"). And neither of the VA examiners who evaluated the Plaintiff in 2018 included panic attacks among Plaintiff's symptoms. *Id.* at 2824, 2846. The ALJ also explained why he found contrary evidence in the record unpersuasive, A.R. at 53, and the court agrees.

Plaintiff further contends that the ALJ's reliance on Plaintiff's daily activities was improper because "an individual need not be an invalid to be found disabled." Pl.'s Br. at 23. The court has no qualms with that proposition. But an ALJ may "use[ ] Plaintiff's concessions concerning [his] daily activities, along with a constellation of other evidence, to discredit [his] claims that [his] impairments are so severe as to be disabling." *Laura A. v. Kijakazi*, No. 21-cv-451 (GMH), 2022 WL 3644810, at *16 (D.D.C. Aug. 24, 2022); 20 C.F.R. § 404.1529(c)(3)(i) (providing that, in evaluating a claimant's symptoms, an ALJ may properly consider their "daily activities"). That is what the ALJ did here. He identified Plaintiff's participation in certain social activities—such as boxing and a frisbee golf league—as inconsistent with his "reports of back pain and social difficulties." A.R. at 49. The ALJ "did not rely solely on the discrepancies between Plaintiff's testimony and [his] daily activities in concluding that [his] symptoms were not disabling." *Laura A.*, 2022 WL 3644810, at *17. Rather, he cited other specific evidence from the record, such as chart notes and VA assessments, to support his finding that Plaintiff's symptoms were not as disabling as alleged. *See generally* A.R. 48–50.

"At bottom, [Plaintiff] objects to the amount of weight the ALJ attached" to his statements. *See* Pl.'s Br. at 21–23; *Wilson v. Comm'r of Soc. Sec.*, No. 24-5073, 2025 WL 2047967, at *5 (D.C. Cir. July 22, 2025). "But that is a question about the degree to which [his symptoms] impact[ed] [his] ability to work," the answer to which amounts to a "factual finding" reviewed "only for substantial supporting evidence." *Id.* Because the ALJ reasonably rooted his findings in record evidence, the court finds no error with the ALJ's conclusion that Plaintiff's subjective statements about his symptoms were "outweighed" by "countervailing" evidence in the record. *See O'Hare v. O'Malley*, No. 23-cv-5186, 2024 WL 4441579, at *2 (D.C. Cir. Oct. 8, 2024).

* * *

In sum, the court agrees with the Commissioner that the ALJ properly assessed the relevant factors and the robust record here, and that the ALJ's decision is supported by substantial evidence. *See* Def.'s Br. at 6–13. The court rejects Plaintiff's contention that the ALJ "failed to cite to any specific medical facts or even persuasive non-medical evidence that exhibits a foundation for the mental RFC found for [Plaintiff]." Pl.'s Br. at 20. The ALJ detailed Plaintiff's background, substance use history, and summarized Plaintiff's individual psychotherapy notes, as well as the medical opinions of VA assessors, and ultimately credited Plaintiff's testimony regarding the limiting effect of certain symptoms, even if he did not find them as severe as alleged. A.R. 46–54. Because there is substantial evidence in the record to support the ALJ's conclusion, and because he built a logical—albeit abbreviated—bridge from the evidence to that conclusion, Plaintiff fails to meet his burden to persuade the court that reversible error occurred.

**B. Consideration of Moderate Limitations in Concentration, Persistence, or Pace**

Plaintiff next argues that the "ALJ failed to present a hypothetical question to the vocational expert . . . that accurately described the mental limitations recognized for [Plaintiff] in the ALJ's decision." Pl.'s Br. at 24. The hypothetical that an ALJ poses to the vocational expert

"must accurately describe a claimant's impairments so that the vocational expert can adequately assess whether jobs exist for the claimant." *Petty v. Colvin*, 204 F. Supp. 3d 196, 205 (D.D.C. 2016). The "[f]ailure to accurately describe a claimant's impairments can serve as grounds for reversal." *Id.* The hypothetical the ALJ posed to the vocational expert included the following limitations:

> [The claimant] needs to avoid ladders or unprotected heights. He needs to avoid the operation of heavy, moving machinery. He needs a low stress work environment. By that I mean no production line. *He needs simple tasks*, needs to avoid contact with the public or co-workers. And by that I mean he needs tasks that do not require the assistance of others, or requiring him to assist others in the performance of the tasks.

A.R. at 80 (emphasis added). Plaintiff argues that the hypothetical was fatally deficient because it failed to account for Plaintiff's "moderate limitations in concentration, persistence, or pace." Pl.'s Br. at 24. The Commissioner counters that the ALJ did include Plaintiff's limitations "in the RFC, limiting Plaintiff not only to simple work, but further providing that he should not work" in certain settings. Def.'s Br. at 19. While the court agrees with Plaintiff that the ALJ's hypothetical was deficient, the court finds the error harmless. *See Saunders*, 6 F.4th at 4.

The D.C. Circuit, unlike some other circuits, has not yet addressed the issue of whether by including in a hypothetical a limitation to "simple tasks," the ALJ properly accounts for a claimant's limitations in concentration, persistence, and pace. *See, e.g.*, *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (collecting cases from the Sixth, Seventh, Eighth, and Ninth Circuits). "Some courts in this District have adopted a rule that limiting a claimant's work to 'simple, routine, repetitive[,] and unskilled tasks' does not 'sufficiently capture[ ]'" those limitations. *De Deaux v. Kijakazi*, No. 21-cv-682 (DLF), 2022 WL 14760678, at *6 (D.D.C. Oct. 25, 2022) (quoting *Petty*, 204 F.

Supp. 3d at 206 and collecting cases). "But even these courts consider an ALJ's failure to follow this rule harmless where . . . the 'medical evidence [in the record] demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite [his] limitations in concentration, persistence, and pace.'" *Id.* (quoting *Petty*, 204 F. Supp. 3d at 206). This court follows that approach.

The ALJ's hypothetical appropriately included limitations that accounted for Plaintiff's difficulties in interacting with others and working in high-stress situations and his other physical limits. A.R. at 80. To be sure, the hypothetical did not expressly account for Plaintiff's limitations in concentration, persistence, or pace. Nonetheless, during the hearing, the ALJ followed up with the vocational expert, asking about the number of breaks, off-task behavior, and unscheduled absences that could be tolerated by employers, which did account for concentration, persistence, and pace. *Id.* at 81. And the evidence in the record, as explained by the ALJ, demonstrates that the claimant can engage in simple, routine tasks within the limitations set out by the ALJ. For example, the ALJ quoted one of the VA assessor's evaluations, which stated that Plaintiff's occupational and social impairments were due to "mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks *only during periods of significant stress*." *Id.* at 50 (emphasis added). The ALJ accordingly limited Plaintiff "to simple tasks and low stress work with limited contact with co-workers and the public." *Id.* Therefore, although it would have been better for the ALJ to specifically describe limitations in concentration, persistence, or pace in the hypothetical, the court finds that the failure to do so did not prejudice Plaintiff.

### C. The Appeals Council's Consideration of Dr. Ryser's Opinion

Finally, Plaintiff argues that remand is required so that the ALJ can consider Dr. Ryser's report. Pl.'s Br. at 25–26. Recall that the Appeals Council declined to "exhibit" Dr. Ryser's

opinion because it did "not show a reasonable probability that it would change the outcome of the decision." A.R. at 2. The Appeals Council evaluates all the additional evidence it receives, but "will only mark as an exhibit and make part of the official record additional evidence it determines meets the requirements of [20 C.F.R.] § 404.970(a)(5) and (b)." 20 C.F.R. § 404.976. Those provisions require that the evidence be "new, material, and relat[ing] to the period on or before the date of the hearing decision," and that there be "a reasonable probability that the additional evidence would change the outcome of the decision." *Id.* at §§ 404.970(a)(5), (b). Because the Appeals Council necessarily considered Dr. Ryser's report when declining to exhibit it, the court understands Plaintiff's true argument to be that the Appeals Council failed to "explain why the evidence from Dr. Ryser is allegedly not new or material when denying review." Pl.'s Br. at 26.

As another court in this District has observed, there is "some disagreement between federal courts about whether the Appeals Council must *explicitly* articulate its assessment of . . . new evidence," but the D.C. Circuit has not addressed the issue. *See Banks v. Astrue*, 537 F. Supp. 2d 75, 80 (D.D.C. 2008) (collecting cases). The court in *Banks* decided that the Appeals Council's "failure to specifically address the new evidence [did] not automatically warrant a remand." *Id.* (citing *Bryant v. Barnhart*, No. 05-cv-0017, 2005 WL 1804423, at *5 (W.D.Va. Jan. 21, 2005)). This court agrees. But the Appeals Council's "failure to deal with such evidence in any fashion meaningful to the district court's substantial evidence review runs the risk of a remand to require the Commissioner to explicitly consider the additional evidence . . ." *Bryant*, 2005 WL 1804423, at *5. This is because "[i]t is the [SSA's] duty to determine the weight of evidence and resolve evidentiary conflicts and this [c]ourt may not substitute its judgment for that of the [SSA]." *Jeffries*, 723 F. Supp. 2d at 194.

Here, because Dr. Ryser's report appears to be both new and contain pertinent information —which the Commissioner does not contest—it was incumbent on the Appeals Council to explain why the evidence had "no reasonable probability" of changing the outcome of the decision. A.R. at 2. In the absence of such an explanation, the court would have to speculate why the Appeals Council ultimately decided not to exhibit Dr. Ryser's report. The court declines to do so. "While this evidence may not have been accorded significant weight by the ALJ (if it had been available to him) or by the Appeals Council and the evidence may not have changed the [agency's] decision to deny benefits, it is not within the province of this [c]ourt to determine how this evidence should have been evaluated by the Commissioner." *Jeffries*, F. Supp. 2d at 195. The court therefore remands this case to the agency so it can evaluate Dr. Ryser's report and its accompanying materials. "[I]n conducting this analysis, more than [] boilerplate language . . . must be provided." *Id.*

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment of Reversal, ECF. No. 8, is denied in part and Defendant's Motion for Judgment of Affirmance, ECF No. 13, is granted in part. The court remands the case to the Commissioner for further review consistent with this Memorandum Opinion. The court will retain jurisdiction over this matter in the event Plaintiff wishes to challenge the Commissioner's ruling on remand or notice an appeal.

Dated: November 5, 2026

Amit P. Mehta
United States District Judge